*In re: Criminal Complaint, Michael J. Charles and
Amy M. Bevers (Spokane County) (AA)*

## AFFIDAVIT

STATE OF WASHINGTON      )
                                            :ss
County of Spokane                )

Brad Richmond, being first duly sworn on oath, deposes and states:

I am employed full-time as a Detective with the Spokane County Sheriff's Office (SCSO) located in Spokane, Washington. I have been employed with the SCSO for approximately 13 years. In that capacity, I have been responsible for investigating violent crimes, drug related investigations, and have participated in undercover operations. Prior to my employment with the SCSO, I worked for 3 years as a law enforcement officer for the Airway Heights Police Department (AHPD) located in Airway Heights, Washington. In that capacity, I was responsible for enforcement of state laws , and I also conducted criminal investigations. I have over 11 years of law enforcement experience conducting drug investigations. I have participated in the execution of hundreds of search and arrest warrants involving drug offenses and gathered drug related evidence. I have utilized numerous cooperative witnesses in federal and state investigations. I have

Affidavit of Brad Richmond
1 of 9
bradaffidcharles.wpd

also participated in interviews with subjects involved in the trafficking and subsequent distribution of controlled substances.

I am a federally deputized task force officer (TFO), under Title 18 United States Code (USC) §§ 2510 and 2516. I am currently assigned to the Spokane Violent Crime Gang Enforcement Team (SVCGET), a Federal Bureau of Investigation (FBI) Safe Streets Task Force, which is charged with conducting violent crime investigations and criminal enterprise investigations targeting gang members and associates.

Your Affiant has observed and examined information, records, and documents maintained by individuals involved in illegal drug distribution. Your Affiant has examined narcotic paraphernalia associated with the manufacture, packaging, and sale of illegal drugs.

Based upon your Affiant's training and experience, and on your Affiant's participation in criminal investigations, involving sales of controlled substances, your Affiant knows the following: Drug traffickers often place assets in names other than their own to avoid detection of these assets by government agencies; that even though these assets are in other persons names, drug dealers continue to use the assets and exercise dominion and control over them; that drug traffickers

Affidavit of Brad Richmond
2 of 9
bradaffidcharles.wpd

often work to conceal their identities and the actual residences they reside within;

that drug traffickers will take steps to prevent their name(s) from being disclosed

on official records/documents, such as utility records, in order to prevent law

enforcement officers from associating certain property to those individuals; that

drug traffickers sometimes maintain, on hand, large amounts of U.S. Currency in

order to maintain and finance their on going drug business; that traffickers

maintain books, records, receipts, notes, ledgers, logs, airline tickets, money

orders, and other records and papers relating to the manufacture, transportation,

ordering, sale and distribution of controlled substances, traffickers commonly

"front" (provide on consignment) controlled substances to their clients; that the

aforementioned books, records, receipts, notes, ledgers, etc. are maintained where

the manufacturers have ready access to them, such as their homes and vehicles;

that it is common for drug traffickers to hide/keep contraband, including firearms,

and proceeds of drug sales and transactions in locations within or near their

residences, including outlying buildings which commonly include

sheds/garages/closets, and the curtilage of the primary residence, and also keep

alternative residences referred to as "stash" houses, where contraband and other

items described in Attachment B are located in order to conceal those items from

Affidavit of Brad Richmond
3 of 9
bradaffidcharles.wpd

law enforcement authorities; that records of drug transactions, including ledgers, are often kept on electronic storage devices, including on hard drives and such devices are often impractical to search on the premises and require individuals with specialized training to acquire information from such electronic mediums; that persons involved in drug trafficking conceal in or near their residences or outbuildings, caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, firearms, and other items of value and/or proceeds of drug transactions relating to obtaining, transferring, secreting, or spending of large sums of money which result from drug trafficking activities; that when drug traffickers collect large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits.  Your Affiant knows that to accomplish this goal, drug traffickers utilize, among other things, domestic banks and their attendant services, securities, cashier's checks, money drafts, real estate, and business fronts; that controlled substance traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their customers and commonly use cellular telephones and digital pagers to communicate with their customers and suppliers; that drug traffickers and criminal gang members take, or cause to be taken, photographs of

Affidavit of Brad Richmond
4 of 9
bradaffidcharles.wpd

themselves, their associates, their property, and their contraband, and that these traffickers usually maintain these photographs in their residence or possession; that traffickers keep paraphernalia for manufacturing, packaging, weighing, and distributing controlled substances; that these paraphernalia include, but are not limited to, scales, plastic bags, aluminum foil, paper bindles, zip-lock bags, and other containers commonly used to package and store controlled substances, that the courts have recognized that firearms are a tool of the drug trafficking trade; that drug traffickers utilize firearms to protect themselves and their drugs from being robbed by rival gang members.

Your affiant requests issuance of a Criminal Complaint and arrest warrant for Micheal J. Charles, for violating 21 U.S.C. § 841(a)(1), § 846, and 18 U.S.C. § 2.

## PROBABLE CAUSE

1.    Based on information provided by cooperating witnesses, and by information gleaned from a Title III investigation, your affiant became aware that Micheal J. Charles (J. Charles), was engaged in drug distribution in the Spokane area.  Members of the SVCGET utilized CW3 to complete a controlled drug buy with J. Charles.  CW3 was cooperating in return for consideration for pending

Affidavit of Brad Richmond
5 of 9
bradaffidcharles.wpd

criminal charges. CW3 has prior felony convictions. CW3 had advised TFO Ron

Miya that CW3 had in the past previously purchased ecstasy pills from J. Charles

for $3 a pill.

     2.     On May 8, 2008, CW3 contacted J. Charles to arrange for a purchase

of marijuana. CW3 contacted J. Charles at (509) 599-6106. A Title III

investigation revealed that J. Charles had used this phone number to contact his

younger brother, Micheal D. Charles (D. Charles). D. Charles has been federally

indicted for the distribution of controlled substances.

     3.     SVCGET initiated surveillance of 1803 West 1st, Spokane, WA, the

known residence of J. Charles. J. Charles was observed leaving this residence

prior to the sale of marijuana. J. Charles met with CW3 and completed the drug

transaction. J. Charles returned to his residence of 1803 West 1st, Spokane, WA.

J. Charles was videotaped leaving and returning to this residence. J. Charles'

returned to the residence, with a white female, known by your affiant to be Erica

Shepard, J. Charles' girlfriend. Drug analysis, conducted by the Washington State

Lab, revealed that the substance obtained from J. Charles contained 102 grams of

marijuana.

Affidavit of Brad Richmond
6 of 9
bradaffidcharles.wpd

4.      On June 19, 2008, CW3 contacted J. Charles to inquire about a purchase of ecstasy pills.  J. Charles told CW3 that his supplier was supposed to be in town that day and that he (J. Charles) had been waiting to be re-supplied.  J. Charles advised that as soon as he (J. Charles) got word, he would contact CW3 to arrange for the sale.

5.      On July 1, 2008, TFO Alan Edwards observed J. Charles exit the residence located at 1803 W. 1st, Spokane, WA.  On July 7, 2008, CW3 was contacted in the evening by Michael J. Charles and said that he was ready to sell CW3 ecstasy.

6.      On July 8, 2008, Detective Miya and SVCGET Officers met with CW3 to conduct a controlled purchased of ecstasy from J. Charles.  CW3 contacted Charles on his cell phone at 509-599-6106 to establish a purchase of 200 ecstasy pills for $800.00.  During the controlled buy, CW3 called (recorded) J. Charles on the above listed phone number of 509-599-6106, which was the same phone number J. Charles was monitored using during the Title III wire intercept.  During the contact between CW3 and J. Charles, J. Charles used an additional phone to arrange the controlled substance transaction with CW3.  Your affiant knows that individuals involved in the trafficking of controlled substances

Affidavit of Brad Richmond
7 of 9
bradaffidcharles.wpd

often use multiple phones in order to avoid wire interception by law enforcement. In fact, your affiant knows that J. Charles spoke about using an alternate phone with D. Charles during the Title III wire intercept in order to avoid law enforcement detection. Furthermore, to insulate himself from law enforcement, J. Charles sent a female, later identified as Amy Bevers, to complete the delivery of ecstasy pills. The transaction was completed at a business location parking lot in North Spokane, WA.

7.    Immediately after the transaction, J. Charles contacted CW3 to ensure that the delivery had been made and that CW3 was satisfied with the pills. Your affiant examined the pills that were delivered by Bevers at the direction of J. Charles, and noticed that these pills bore the same imprints as the pills that had been previously purchased from D. Charles, his younger brother, and others involved in the distribution of ecstasy identified in this investigation. The pills sold to CW3 by J. Charles, thru Bevers, were tested at the Washington State Patrol Crime Lab and determined to contain the controlled substance methamphetamine. Your affiant knows that the imprints (logos) and colors of ecstasy pills can often assist law enforcement with determining which clandestine laboratory manufactured the pills.

Affidavit of Brad Richmond
8 of 9
bradaffidcharles.wpd

8.    On June 26, 2008, your affiant conducted a utilities check for 1803 West 1st, Spokane, WA.  Your affiant determined the listed subscriber to be Erica R. Shepard and that the account had been active since 2006.  Your affiant knows that Shepard is J. Charles' girlfriend and the female previously observed returning to his residence with J. Charles, after the completed drug buy with CW3.  Your affiant knows that Shepard has several prior drug related convictions, and a federal conviction for misprision of a felony.  On July 1, 2008,TFO Alan Edwards observed Michael J. Charles exiting the front door of the 1803 West 1st residence.

## CONCLUSION

Your affiant submits that there is probable cause to believe that Micheal J. Charles and Amy Bevers distributed controlled substances in the Eastern District of Washington, in violation of 21 U.S.C. § 841(a)(1), § 846, and 18 U.S.C. § 2.

Brad Richmond, Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this _14th_ day of July, 2008.

Cynthia Imbrogno
United States Magistrate Judge

Affidavit of Brad Richmond
9 of 9
bradaffidcharles.wpd